UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE WINDRIDGE OF NAPERVILLE CONDOMINIUM ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | 16 C 3860 |
| vs. | ) ) ) | Judge Gary Feinerman |
| PHILADELPHIA INDEMNITY INSURANCE CO., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Windridge of Naperville Condominium Association brought this suit under the diversity jurisdiction, alleging that its insurance policy with Philadelphia Indemnity Insurance Company ("PIIC") entitled it to an independent appraisal to value storm damage to its condominium building in Naperville, Illinois. Doc. 19. (There actually are several damaged buildings, but for simplicity the court will pretend there is just one.) Windridge moved to compel an appraisal. Doc. 25. The court granted in part and denied in part the motion, requiring PIIC to proceed to appraisal as to the damage indisputably covered by the policy, but not as to the claimed damage over which there was a genuine coverage dispute. Docs. 47-48 (reported at 2017 WL 372308 (N.D. Ill. Jan. 26, 2017)).

The parties proceeded to litigate that coverage dispute, which concerns the extent of PIIC's obligation to replace the building's aluminum siding. Docs. 51, 53. The storm physically damaged the siding on the building's south and west elevations, but not on the north and east elevations. PIIC says that the policy requires it pay to replace the siding only on the south and west elevations. Windridge says that because replacement siding that matches the undamaged north and east elevations is no longer available, PIIC must pay to replace the siding on all four

1

elevations to ensure that all four elevations match. Windridge moves for partial summary judgment on that coverage issue. Doc. 67. The motion is granted in part and denied in part.

## Background

The following facts are stated as favorably to PIIC, the non-movant, as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Windridge's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

PICC issued an insurance policy to Windridge covering damage to its building. Doc. 74 at ¶¶ 1, 5-6. The policy's "[c]overage" provision states that PIIC must "pay for direct physical 'loss' to Covered Property caused by or resulting from any of the Covered Causes of Loss." *Id.* at ¶ 10. Here, in pertinent part, is the policy's loss valuation provision:

>  7. **Valuation**
> 
>  We will determine the value of Covered Property in the event of "loss" as follows:
>
>  a. At replacement cost (without deduction for depreciation) as of the time of "loss" …
>
>  (1) We will not pay more for "loss" on a replacement cost basis than the least of:
>
>  (a) The Limit of Insurance applicable to the lost or damaged property;
>
>  (b) The cost to replace the lost or damaged property with other property:
>
>  (i) *Of comparable material and quality*; *and*
>
>  (ii) *Used for the same purpose*; …

*Id*. at ¶ 12 (emphasis added). And here is the policy's loss payment provision:

> **4. Loss Payment**
>
> a. In the event of "loss" to Covered Property covered by this Coverage form, at our option, we will either:
>
> (1) Pay the value of lost or damaged property;
>
> (2) Pay the cost of repairing or replacing the lost or damaged property;
>
> (3) Take all or any part of the property at an agreed or appraised value; or
>
> (4) Repair, rebuild or replace the property with other property *of like kind and quality*.

*Id*. at ¶ 13 (emphasis added).

The policy sets forth the following relevant definitions. "Covered Property … means," among other things, the "'Buildings' described in the Declarations." Doc. 28-1 at 3-4. "'Buildings' means buildings or structures." *Id*. at 25. And "'[l]oss' means accidental loss or damage." *Id*. at 26.

On May 20, 2014, while the policy was in effect, a hail storm damaged the building. Doc. 74 at ¶ 7. The parties agree that the storm was a "Covered Cause of Loss," *id*. at ¶¶ 8, 11, and PIIC has already paid $2,111,717.96 for what it believes to be the damage caused by the storm, *id*. at ¶ 9. The parties further agree that the storm physically damaged the siding on only the building's south and west elevations. Doc. 34-1 at 3; Doc. 34-2 at 2; Doc. 69 at 4-5; Doc. 73 at 1. The agreement ends there. As noted, PIIC says that it need only pay to replace the siding on those two elevations. Windridge says that because no siding now on the market matches the siding on the undamaged north and east elevations, PIIC must pay to replace the siding on all four elevations in order to return the building to its pre-hailstorm appearance.

The court cannot grant summary judgment to Windridge on the factual question underlying the dispute: whether there is siding available on the market that matches the siding on the undamaged north and east elevations. Windridge submits evidence that matching siding has been discontinued and that no match exists. Doc. 71 at ¶¶ 14-17. PIIC responds with evidence that a match does exist. Doc. 74 at ¶¶ 14-17; Doc. 77 at ¶¶ 7-12. The conflicting evidence gives rise to a genuine dispute about a material fact that precludes the court from holding on summary judgment that no match presently exists. Thus, the court will limit its discussion to the legal question underlying the parties' dispute: Assuming that no matching siding is available, whether the policy requires PIIC to replace or pay to replace the siding on all four elevations or only on the physically damaged south and west elevations.

## Discussion

This diversity suit is governed by Illinois law because it was filed in a district court located in Illinois and neither party argues choice of law. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012). "Under Illinois law, construction of insurance policies is a question of law." *Keystone Consol. Indus., Inc. v. Emp'rs. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006). The Seventh Circuit has summarized Illinois law governing the interpretation of insurance policies as follows:

> In Illinois, insurance policies are contracts; the general rules governing the interpretation and construction of contracts govern the interpretation and construction of insurance policies. Illinois courts aim to ascertain and give effect to the intention of the parties, as expressed in the policy language, so long as doing so does not contravene public policy. In doing so, they read the policy as a whole and consider the type of insurance purchased, the risks involved, and the overall purpose of the contract. If the policy language is unambiguous, courts apply it as written. Policy terms that limit an insurer's liability are liberally construed in favor of coverage, but only when they are ambiguous, or susceptible to more than one reasonable interpretation.

4

*Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011) (citations omitted). A court "will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *see also Native Am. Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 732 (7th Cir. 2006).

The central question here is whether—given that only the siding on the south and west elevations was physically damaged, and assuming that no siding on the market matches the siding on the undamaged north and east elevations—the policy requires PIIC to replace or to pay to replace the siding on all four elevations or solely on the two physically damaged elevations. As noted, the policy provides that PIIC must "pay for direct physical 'loss' to Covered Property caused by or resulting from" the storm, with the amount of loss being "[t]he cost to replace the lost or damaged property with other property … [o]f comparable material and quality … and [u]sed for the same purpose," or, put another way, "of like kind and quality." Doc. 74 at ¶¶ 12-13; Doc. 77 at ¶¶ 3-4. PIIC contends that because only the south and west elevations suffered "direct physical 'loss,'" it need only replace the siding on those elevations. Doc. 73 at 2-3. That contention, while attractive at first glance, rests on the premise that the phrase "Covered Property" refers to the building on an elevation-by-elevation basis as opposed to the building as a unified whole. Yet there is no definitive way to test that premise, for while it would be correct as a matter of ordinary usage to say that the storm damaged the siding on the building's south and west elevations, it would be just as correct to say that the storm damaged the building's siding, period.

Given the indeterminate nature of the inquiry into the policy's plain terms, it is not surprising that courts addressing similar disputes have reached conflicting results. *Compare Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55 (D.D.C. 2015)

(D.C. law) (requiring the insurer to pay to replace all of a church's exterior limestone panels, including those that were undamaged by a 2011 earthquake, to ensure that all of the panels matched in color and weathering); *Trout Brook S. Condo. Ass'n v. Harleysville Worcester Ins. Co.*, 995 F. Supp. 2d 1035, 1042-43 (D. Minn. 2014) (Minnesota law) (holding that, under the applicable definition of "covered property," which "indicate[d] coverage extends to '*buildings and structures*,'" the insurer was required to pay to replace even undamaged shingles on the insured's buildings because shingles that matched the undamaged shingles were no longer available); *Cedar Bluff Townhome Condo. Ass'n, Inc. v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 292, 295 (Minn. 2014) (Minnesota law) (affirming an appraisal panel's "'award for a total replacement of the siding'" on the ground that "[b]ecause of the color mismatch resulting from the inability to replace the hail-damaged siding panels with siding of 'comparable material and quality,' the covered property—[the insured's] 'buildings'— … sustained a covered loss"); *Mastin v. Sandy & Beaver Ins. Co.*, 10 Ohio Misc. 2d 22, 23 (1983) (Ohio law) ("Plaintiff's insurance agreement states defendant company is obliged to repair or replace damaged property. The court finds that vinyl flooring cannot be said to be repaired if an obvious patch is left, and that the whole floor ought to have been replaced."), *with Woods Apartments, LLC v. U.S. Fire Ins. Co.*, 2013 WL 3929706, at *2 (W.D. Ky. July 29, 2013) (Kentucky law) ("The Policy's replacement coverage provision states that Defendants must pay the cost of replacing the damaged property with comparable material and quality relative to the undamaged portions. Essentially, if Defendants can repair the damaged area with comparable or similar material, the Policy provides that they are not obligated to replace undamaged portions.") (citation omitted); *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, 2011 WL 6754063, at *10 (S.D. Fla. Dec. 22, 2011) (Florida law) (granting summary judgment to the insurer on the ground that the policy

"provides coverage only for 'direct physical loss or damage' and does not cover the replacement of undamaged property to ensure 'matching'"); *Mohr v. Am. Auto. Ins. Co.*, 2004 WL 533475, at *10, *14 (N.D. Ill. Mar. 5, 2004) (Illinois law) (holding that a policy obligating the insurer to pay "the necessary amount spent to repair or replace the damaged structure" required it to pay to replace only damaged shingles, not the entire roof); *Weiler v. Union Ins. Co.*, 2006 WL 2403935, at *2 (Neb. App. Aug. 22, 2006) (Nebraska law) (holding that a policy providing coverage for "physical loss to property" obligated the insurer to "pay to replace only the siding damaged by hail"); *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1186 (Pa. Super. 2007) (Pennsylvania law) (rejecting the insureds' argument that, under the terms of a policy requiring the insurer to pay "the replacement cost of that part of the building damaged," the insurer was "to pay for the cost of replacing [the insureds'] entire roof").

In the context of this particular case, where there (allegedly) is no replacement siding to match the siding on the physically undamaged north and east elevations, the only sensible result is to treat the damage as having occurred to the building's siding as a whole. As Judge Bates explained in reaching the same conclusion on analogous facts:

> Imagine that an insurance company pays for repairs to one wall of an insured's dining room. The room's paint color—a light blue—is no longer manufactured. If the insurance company were to insist on a bright red or even dark blue paint—of the same quality and manufacture—just for that single wall, no one would feel that the insured had been made whole; only repainting the whole room would do that.

*Nat'l Presbyterian*, 82 F. Supp. 3d at 60. The same holds true here: If PIIC were to replace the siding on the damaged south and west elevations with siding that did not match that on the undamaged north and east elevations, it could not possibly be said that Windridge had been made whole, for it would be left with a building suffering from a glaring and profound flaw.

7

Given this, the only sensible result under the present circumstances is to construe the term "Covered Property" to refer to the building as a whole as opposed to one or fewer than all elevations. This means that the siding on the building as a whole sustained physical damage. That physical damage indisputably was caused by—or at least resulted from—the storm. And because the policy obligates PIIC to "pay for direct physical 'loss' to Covered Property caused by or resulting from" the storm, with the amount of loss being "[t]he cost to replace the lost or damaged property with other property … [o]f comparable material and quality … and [u]sed for the same purpose," PIIC must replace or pay to replace the siding on all four of the building's elevations—assuming, of course, that no siding is available that matches the undamaged siding on the north and east elevations. *See Nat'l Presbyterian*, 82 F. Supp. 3d at 59-60; *Trout Brook S. Condo. Ass'n*, 995 F. Supp. 2d at 1042-43; *Cedar Bluff*, 857 N.W.2d at 295.

Even if this were not the *only* sensible reading of the policy, the most that could be said in PIIC's favor is that the policy is ambiguous. And even then, Windridge's reading of the policy would prevail, for Illinois law holds that courts must "construe ambiguous provisions in favor of coverage." *State Auto Prop. & Cas. Ins. Co. v. Brumit Servs., Inc.*, 877 F.3d 355, 357 (7th Cir. 2017); *see also United Servs. Auto Ass'n v. Dare*, 830 N.E.2d 670, 678 (Ill. App. 2005) ("[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer."). PIIC asserted at the hearing on the present motion that this principle does not apply where the insured is a sophisticated party, but PIIC has adduced no evidence to suggest that, regardless of Windridge's level of sophistication, the "terms and the drafting" of the policy were not subject to PIIC's "total control," and thus has failed to provide any basis to find that Windridge did not "enter into a contract with [its] insurer which [was] written according to the

8

insurer's pleasure by the insurer." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219 (Ill. 1992); *see also State Farm Mut. Auto. Ins. Co. v. Progressive N. Ins. Co.*, 30 N.E.3d 440, 453 (Ill. App. 2015) (same).

With the coverage issue resolved, the only remaining dispute is whether in fact there is no siding available that matches the undamaged siding on the building's north and east elevations. Should that dispute be resolved in court at trial or by appraisal? The policy's appraisal provision states that disputes regarding the amount of loss should be submitted to an appraisal:

> If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Doc. 70-1 at 3. The dispute regarding whether there are matches available for the siding on the north and east elevations, and thus whether PIIC must replace or pay to replace the siding on all four elevations or just on the two physically damaged elevations, is a dispute regarding loss amount. As the court held in its earlier opinion in this case: "In calculating repair or replacement cost, it is necessary to assess what must be replaced or repaired … and how much that work costs. … That determination is a question proper for appraisal." 2017 WL 372308, at *3.

Windridge previously demanded appraisal of the siding issue. Doc. 34-1 at 3-4. The court denied appraisal pending resolution of the coverage question. 2017 WL 372308, at *2 ("[T]he hail storm physically damaged two sides, requiring their repair, and, as a result, those two sides no longer match the two other sides. The only question is coverage: whether this mismatch is a "loss" within the meaning of the policy. And because the only question concerns coverage, the dispute is not subject to appraisal."). Now that the coverage issue has been

9

resolved, appraisal may proceed on the siding issue. *See Cedar Bluff*, 857 N.W.2d at 292 (where a materially identical dispute was submitted to an appraisal panel, albeit before, rather than after, the court resolved the coverage issue).

**Conclusion**

Windridge's summary judgment motion is granted in part and denied in part. If no siding is available that matches the undamaged siding on the building's north and east elevations, PIIC must replace or pay to replace the siding on all four of the building's elevations. Whether in fact such siding is available, and thus whether PIIC must replace the siding on all four elevations or only on the physically damaged south and west elevations, shall be submitted to appraisal. PIIC has until May 4, 2018 to name an appraiser pursuant to the policy's appraisal provision; if it does not do so, Windridge may move the court to appoint an appraiser in PIIC's stead.

April 13, 2018

_____
United States District Judge